## CHARLES W. WRIGHT ET AL. v. WILLIAM HAKE ET AL.

*Sureties in replevin discharged by secret confession of judgment.*

Sureties on a replevin bond can enjoin the prosecution of a suit thereon where their principal, without their knowledge, has stipulated that the defendant may take judgment.

Where mortgaged chattels are left with the mortgager, and the mortgage never becomes available to the mortgagee, the mortgager has no equity growing out of the giving of the mortgage.

Sureties are concluded by a regular judgment against their principal, but not by a secret confession of judgment fraudulently and collusively made between their principal and the obligee.

The attorneys only manage a case, but they cannot prevent their clients compromising or settling it.

An equitable remedy against a judgment is not lost by moving for a new trial at law.

Equity has general jurisdiction in cases of fraud.

Appeal from the Superior Court of Grand Rapids. Submitted January 30. Decided April 3.

INJUNCTION to restrain suit on replevin bond. Defendants appeal.

*Taggart & Wolcott* and *Hoyt Post* for complainants. A judgment in replevin obtained by collusion between plaintiff and defendant is not conclusive on the sureties to the plaintiff's bond, Freeman on Judgments, 180; *Parkhurst v. Sumner*, 23 Vt., 538; *Rathbone v. Warren*, 10 Johns., 587; *Clark v. Niblo*, 6 Wend., 243 a; *Churches v. Barker*, 18 N. Y., 466; *Lothrop v. Southworth*, 5 Mich., 448; and the sureties' remedy is in equity, *Mack v. Doty*, Har. Ch., 366; Story's Eq. Jur., §§ 700–702.

*D. E. Corbitt* and *Norris & Uhl* for defendants cited the following cases as bearing generally on the questions in this case, *Hershler v. Reynolds*, 22 Iowa, 152; *Hale v. Fitch*, 8 Penn. St., 495; *Boynton v. Phelps*, 52 Ill., 215; *Sherry v. Foresman*, 6 Blackf. (Ind.), 56; *Williams v. Vail*, 9 Mich., 162; *O'Neal v. Wade*, 3 Ind., 410; the stipulations of parties have no force if attorneys have appeared for them, *Commissioners v. Younger*, 29 Cal., 147; *Mott v. Foster*, 45 Cal., 72; *McConnell v. Brown*, 40 Ind., 384; *Berghoff v. Heckwolf*, 26 Mo., 511; *Daniels v. Patterson*, 3 Comst., 50.

COOLEY, J. The bill of complaint in this cause was filed by Charles W. Wright, Charles H. Southwick, William G. Gustine, Darwin P. Cody and Charles E. Olney against William Hake and William T. Merritt, setting forth the following state of facts:

That on the 24th day of November, 1874, the defendant Hake had in his possession certain personal property, which was taken from him by a writ of replevin at the suit of defendant Merritt; that the complainants became sureties for Merritt in the replevin suit; that Hake defended the suit, and the same was tried April 2,

1875, and verdict rendered therein for the plaintiff; that afterwards the verdict was set aside and a new trial ordered; that still later and on or about the thirteenth day of February, 1876, Hake and Merritt entered into an agreement in writing, by the terms whereof Merritt agreed to abandon his suit and allow Hake to take judgment therein, in consideration of the sum of one hundred dollars, which was duly paid; that this was done fraudulently to cheat the complainants; that no arrangement was made between Hake and Merritt for the return of the property replevied, but the same was left in the hands and under the control of Merritt, who was and is irresponsible and insolvent; that in pursuance of said agreement Merritt did withdraw and abandon his defense, which coming to the knowledge of complainants, they endeavored to defend, but unsuccessfully, and Hake elected to take judgment for the value of the property, and did take judgment for $1200 and costs taxed at $38.75; that complainants had no notice or knowledge of said agreement for the abandonment of said suit, and did not know of its existence, until the fact was brought out in the evidence on the trial; that Hake has taken out execution on his judgment, which has been returned unsatisfied, and that since its return he has brought suit on the replevin bond, which was assigned by the sheriff to him for the purpose. And the bill prays that the suit on said bond be perpetually enjoined.

The answer of Hake gave the following version of the facts: that on or about the first day of November, 1874, Studley Palmer sold to him, Hake, a chattel mortgage which had been given by Merritt to Palmer upon the goods mentioned in the bill of complaint for the sum of $1600; that Merritt made default in the payment of the mortgage, and Hake took possession of the goods; that a few days thereafter Merritt replevied the goods, claiming that a part of the consideration given for the mortgage was intoxicating liquors, and that the mortgage was therefore void; that afterwards, in January, 1876,

Merritt called on Hake, and stated that when the goods were transferred to him by Palmer, it was done for the purpose of keeping them away from Palmer's creditors, and that he, Merritt, had no interest in the goods except in a quantity of about the value of one hundred dollars; that any other interest in the replevin suit belonged to Palmer, who had procured the sureties to sign the bond and given them security for so doing, and that if Hake would pay him one hundred dollars he would say nothing more about the suit; that defendant did pay him the one hundred dollars, and afterwards when the case was called for trial the counsel for Merritt stated that he had not his witnesses ready, as he had no interest in the suit, and he asked to have the trial postponed for two weeks, which was done by the court; that on the adjourned day when the cause was called the counsel for Merritt came in and stated he was ready for trial, whereupon the trial proceeded with the result stated in the bill. The answer denied all fraud, and claimed the benefit of a demurrer.

On the issue made by the answer the case went to a hearing. The agreement between Merritt and Hake was proved, and it was embodied in the paper given in the margin.* It was shown that Merritt was irresponsible when the agreement was made, and that Hake was aware of the fact. It also appeared that knowledge of the arrangement between Hake and Merritt was not brought to the knowledge of the sureties, and that it came out on the second trial of the replevin suit, while the coun-

---

* WILLIAM T. MERRITT

v.

WILLIAM HAKE.

In this case it is agreed and stipulated that the defendant may take judgment against the plaintiff, and that the value of the property taken by said plaintiff from the said defendant under and by the writ of replevin in this cause was at the time of being so taken twelve hundred dollars. January 21, 1876.

$1200.    WILLIAM T. MERRITT, Plaintiff.
          WILLIAM HAKE, Defendant.

sel for the plaintiff in the absence of his client, was examining Hake as a witness, and endeavoring to make out a case. It is evident from Hake's testimony that knowledge of the writing was purposely concealed from the sureties. The case of complainant seems therefore to be made out on the facts, and it only remains to see whether it constitutes a case for relief, and if so, whether a defense is established.

It was proved that the sureties in the replevin bond took a chattel mortgage given by Merritt and Palmer on the goods replevied to secure them against liability, but it also appeared that the goods were left in the hands of the mortgagors, and that the security never become available to the complainants. Defendants, therefore, have no equities growing out of the giving of that mortgage. It also appeared that the agreement between Hake and Merritt was not made use of by Hake in any manner on the trial of the replevin suit, and it is therefore urged by defendants that complainants were not injured thereby, especially as counsel for Merritt actually appeared and went on with the case. It is true this fact is shown, but the evidence is abundant that the counsel was abandoned by his client because of the agreement with Hake, and that he was left powerless to prosecute the suit to effect. The sureties made some little effort to obtain a continuance of the case, but Merritt refused to assist, and his bad faith in the transaction is manifest. And it is equally manifest that had the complainants been prepared to prosecute the suit with vigor, and had they attempted to do so, they might at any moment have been interrupted and defeated in their efforts by the production of the secret agreement of Hake with Merritt. The sureties were not only abandoned, but in respect to the efforts they were permitted to make for their own protection effectual steps were taken to render it impossible that the efforts should succeed. The suggestion that this conduct did not injure the sureties manifestly has no force whatever.

But the defendants insist that the sureties in the replevin bond, by the express terms of their obligation took upon themselves the risks of such an arrangement between the parties, and are not at liberty to complain of it. To do full justice to the position assumed by counsel on this branch of the case, we quote from his brief.

"The relations of Hake, defendant in replevin and prospective assignee of the replevin bond given to the sheriff by Merritt, plaintiff, and sureties, were not such as to make it inequitable and unjust to the sureties for him to defend himself by buying his peace and inducing the plaintiff to abandon to the sureties the further prosecution of the replevin suit.

"The condition of the bond, which runs to the sheriff, was that Merritt should ' prosecute the cause to effect,' and if the defendant recover judgment against him, that * * * he will pay such sums as the defendant may recover against him.' The defendant is expected to use all legal means, to the end that the plaintiff does *not* prosecute to effect his suit. Says Campbell, J., in *Reusch v. Demass*, 34 Mich., 76, ' every one must *be* subject to the *incidents* of the litigation where he assumed the *risks* of litigation.' One of these ' incidents' is an agreement between the plaintiff and defendant, that the latter might have a judgment for the value of the property.

"There is no possible friendly obligation between Hake and these sureties, but active and open hostility. They aid to seize his property, and put their bond in its place. He pursues with all diligence. They aid and abet the resistance to this pursuit, by one whom they must have known had only a naked nominal interest; because they take a lien on this property from its nominal and equitable owner, and at the request of the latter they have intervened in the quarrel. They allow this property, with their lien thereon to furnish the sinews of war as long as it lasts. As secured sureties they were the real plaintiffs."

There would be reason and justice in what is here said if the complainants, as sureties, had been permitted to appropriate the replevied property to their own use, and had actually done so; but such is not shown to have been the fact. And the doctrine that where the sureties have acted in good faith to their principal he

may lawfully enter into a secret agreement with the adversary party permitting him to take a judgment which shall conclude the sureties, is in our opinion sound neither in morals nor in law. It is not one of the customary and lawful "incidents" of litigation that the interests of sureties shall thus be secretly bartered away by the party who is legally and morally bound to protect them.

Sureties are undoubtedly concluded by the judgment against their principal when it has been obtained in the customary manner and in the course of regular proceedings. *Williams v. Vail,* 9 Mich., 162; *Lothrop v. Southworth,* 5 Mich., 436; *Hershler v. Reynolds,* 22 Iowa, 152. But this supposes an open and fair pursuit of legal remedies, and when by fraud or collusion with the principal the obligee obtains an advantage of which he seeks to avail himself upon the bond, the sureties may justly say "this is not the obligation into which we entered. We abide the consequences of the open and public undertaking to which we set our hands, but not of the secret arrangement to which our consent was never invited." It has been held that to refer a replevin suit to arbitration without the knowledge and consent of the surety, discharged him; *Pirkins v. Rudolph,* 36 Ill., 306; *Archer v. Hale,* 4 Bing., 464. Still more certainly should this result follow when the secret arrangement which is entered into would not even admit of an available hearing anywhere. Such was the case here; the arrangement made was equivalent to secret confession of judgment, and if binding as between the parties to it, would have made any subsequent hearing a farce.

It is suggested in the brief for defendants that the arrangement did not bind Merritt because not signed by his attorney. It is true that only the attorneys can manage a case, but it is equally true that the attorney cannot prevent his client making a compromise or settlement. It is also urged that complainants lost their remedy in this court by moving for a third trial in a

court at law, after the judgment was entered which they now complain of. There is nothing to this. It was very proper for them to get rid of the judgment in that court if they could, on any ground that was open to them.

We have only to notice further the objection taken to the remedy in equity. It is urged in defense that the equities here insisted upon were available to the parties at law, and might have been relied upon in defense to the suit on the bond. This may be true, but it does not follow that equity could not take jurisdiction of the case. Equity has general jurisdiction in cases of fraud, and sureties have often been relieved under circumstances analogous to the present. See *King v. Baldwin*, 17 Johns, 384; *Viele v. Hoag*, 24 Vt., 46, 51.

The decree, which adjudged the complainants discharged from their obligation, must be affirmed with costs.

The other Justices concurred.